## Commonwealth v. Sack

*Colin Jenei, assistant district attorney,* for the Commonwealth.
*Andrew J. Merlie,* for defendant.

BIESTER, Jr., *J.,* October 3, 1990 — This is a homicide by vehicle case in which defendant was found guilty of homicide by vehicle, driving under the influence, homicide by vehicle unsafe speed, homicide by vehicle reckless driving, recklessly endangering William Myers, recklessly endangering Cornelia Brakastor, involuntary manslaughter, and driving under the influence over 0.10 percent alcohol content, and not guilty of driving under the influence incapable of safe driving.

Defendant has filed timely post-verdict motions and we have held argument with respect to those motions and now file this opinion and order with respect to them.

Defendant has raised the following issues in the case.

(1) Whether the Commonwealth presented evidence sufficient to establish beyond a reasonable

doubt that defendant was in violation of 75 Pa.C.S. §3731(a) at the time of the accident giving rise to the charge of homicide by vehicle.

(2) Whether the jury's verdict of not guilty on the charge of driving under influence, 75 Pa.C.S. §3731(d), precluded a finding of guilt on the charge of homicide by vehicle DUI, 75 Pa.C.S. §3735.

(3) Whether the Commonwealth presented evidence sufficient to establish beyond a reasonable doubt that defendant violated any law on July 31, 1989.

Taking the evidence in the case in a light most favorable to the Commonwealth, the verdict winner, the evidence was as follows:

At approximately 1:30 a.m. on July 31, 1989 a vehicle driven by William Myers in which Cornelia Brakastor was a passenger in the front passenger seat was stopped at a stop light at the intersection of Route 611 and Edison-Furlong Road. It was headed north on Route 611 and was stopped waiting to make a right-hand turn at the intersection. Mr. Myers, the driver of that vehicle, had less than 0.01 percent blood alcohol and there was testimony from an expert witness that that level of alcohol concentration would have no effect on driving.

One Julie Orce testified that immediately prior to the accident she was also driving northbound on Route 611 approximately two miles south of the intersection in which the accident took place. She testified that while she was driving at a lawful rate of speed a vehicle suddenly appeared directly behind her. Route 611 at that point and also at the point of impact is a four-lane highway divided by a center area which is ribbed concrete designed to create certain sounds as one passes over it. She testified that this vehicle's headlights came directly behind her and she was even concerned that the vehicle

might strike her. Suddenly that vehicle veered out to pass her and did so in such an abrupt fashion and with so wide a swing that she thought that it was going to cross over the center line into the oncoming two lanes. It did in fact make contact with the center line and then came back into the regular lane of traffic and proceeded forward. She estimated its speed as it went around her and then took off away from her in excess of 100 miles an hour. She observed the car to the crest of a hill just before the accident area and the car then disappeared from her view. She proceeded on at the lawful rate of speed and arrived at the accident scene immediately after it occurred and noted that one of the vehicles involved in the accident was the car which had passed her a few moments before.

An accident reconstructionist testified that defendant's vehicle, which was the vehicle Ms. Orce had seen, had driven straight into the rear of the victim's car and that its speed at the time of impact was 83 miles per hour. Ms. Brakastor was killed immediately and Mr. Myers was so seriously injured that he remains with some considerable brain damage at the time of trial.

Two blood alcohol tests were taken at Doylestown Hospital. The first blood was drawn at 2:56 a.m. and the second was drawn at 3:55 a.m. The results of the first test showed 0.227 milligrams of alcohol per deciliter of serum blood and the second was 0.22 percent grams per deciliter weight per volume of serum blood. Defendant was taken to the Doylestown Hospital immediately after the accident. Nurse Benningfield of that hospital testified that Mr. Sack was under the influence of alcohol to the extent that rendered him incapable of safe driving and that he did not appear or admit to have any type of head injury and that she was certain that

his appearance and condition were the result of alcohol consumption and not the result of any traumatic injuries suffered in the automobile accident itself. The officers who observed defendant at the scene testified that Mr. Sack was under the influence of alcohol to such an extent that he was incapable of safe driving and explained the reasons for their opinions with respect to that. The evidence in the case also indicated that defendant had been going from one bar to another bar at the time of the accident. The Commonwealth called an expert in the effect of alcohol upon the human body, a Mr. Dunn, and he described the effect of alcohol on the human system including its effect upon one's judgment and upon one's motor skills.

. The evidence of defendant's driving at the time of the accident and the taking of blood within three hours after the accident in two instances, one within 90 minutes after the accident, permitted the jury to find that he was driving with a blood alcohol content of above 0.10 percent. *Commonwealth v. Arizini,* 277 Pa. Super. 27, 419 A.2d 643 (1980); *Commonwealth v. Johnson,* 376 Pa. Super. 121, 545 A.2d 349 (1988). Although the defense expert opined that defendant's blood alcohol level was 0.08 percent at the time of the accident, he conceded that was based upon certain assumptions including the defendant's testimony with respect to the extent of his drinking and eating. It was for the jury to consider whether in light of the conduct of defendant and those who observed him immediately after the accident, as well as the opinion of the Commonwealth expert that defendant's testimony about his eating and drinking were inconsistent with the blood alcohol history, gave the jury sufficient evidence from which to find defendant guilty of driving under the influence with a blood alcohol content above 0.10 percent. Cer-

tainly it has sufficient evidence to make that finding beyond a reasonable doubt.

Since the first issue to a certain extent invites sequential consideration of the third issue, we now point out that as one considers the evidence in the case in a light most favorable to the Commonwealth, there was sufficient evidence from which the jury could find defendant guilty of all the offenses as to which defendant was found guilty.

Defendant contends that the jury's finding him not guilty of driving under the influence as incapable of safe driving, precludes his conviction for homicide by vehicle driving under the influence related.

Neither side has presented us with any case authority either way with respect to this issue. The homicide by vehicle driving under the influence section of the Motor Vehicle Code, 75 Pa.C.S. §3735, provides as follows:

"Any person who unintentionally causes the death of another person as the direct result of the violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) and was convicted of violating section 3731 is guilty of a felony of the third degree when the violation is the cause of death. . ."

To begin with, section 3735 as it refers back to section 3731 does not isolate out any particular subsection of 3731 and treats the section in blanket terms. Under those circumstances therefore the only issue which is really addressed by defendant's contention is whether a jury could find that a person who was guilty of driving under the influence, 0.10 percent blood alcohol content could be guilty of causing death when the same jury has found him not guilty of driving under the influence incapable of safe driving.

This is not a case in which the jury had to guess about the cause of the accident. In this case it was perfectly clear what the conduct of the defendant was at the time of the accident. Quite obviously this jury could find the defendant's unlawful and highly dangerous manner of driving caused the death of Ms. Brakastor.

Further, in this case the Commonwealth's expert witness testified as to how a person with a blood alcohol level of over 0.10 percent would be adversely affected. Mr. Dunn testified that such a person's visual acuity, his reaction time, his perception, his ability to focus his eyes, his judgment and his degree of inhibition were all affected at a 0.10 percent or greater blood alcohol concentration. The Commonwealth argues, and we agree, that the jury had in the combination of evidence, including the testimony of the Commonwealth's expert, sufficient evidence to determine the effect of defendant's high blood alcohol level and to apply that effect to the manner of defendant's driving and to find that he drove in the manner he drove because of the effect of the high blood alcohol level. The issue that the jury focused on therefore with respect to this aspect of causation was not the abstract issue of whether he was *capable* of driving safely, but whether in fact, *he drove safely.* The jury found that he did not drive safely and could reasonably find that the reason he did not drive safely was because of the impact of alcohol by weight in his blood on his judgment and perception and reaction time. The jury could therefore readily determine that that failure of judgment and other impacts of the high degree of blood alcohol was the direct cause of the accident and therefore the death of Ms. Brakastor.

For all of the above reasons the several post-verdict motions of defendant are denied and overruled and we enter the following

## ORDER

And now, October 7, 1990, upon consideration of defendant's post-verdict motions, briefs and argument thereon, we find that the post-verdict motions are denied and overruled and defendant is directed to appear before the undersigned for the imposition of sentence on October 29, 1990, in Courtroom no. 3 at 9:00 a.m., at the Bucks County Courthouse, Doylestown, Pa.